■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v AUGUSTUS INGRAM, Appellant. [653 NYS2d 426] —Carpinello, J. Appeal from a judgment of the County Court of Tompkins County (Sherman, J.), rendered April 14, 1995, upon a verdict convicting defendant of the crimes of criminal possession of a controlled substance in the first degree, criminal possession of a controlled substance in the third degree and criminally using drug paraphernalia in the second degree.

While executing a search warrant at an apartment located at 611 South Meadow Street in the City of Ithaca, Tompkins County, which had been observed by police to be a focal point of drug-trafficking activity, police officers found defendant amidst 48 packets of cocaine on the apartment's second-floor landing. A search of the entire residence disclosed an additional 188 packets of cocaine, a plastic bag containing chunks of cocaine, razor blades, seven bags of empty ziploc bags, a functional police scanner and $600 in cash. The aggregate weight of the cocaine seized was determined to be 5.5 ounces. Indicted for criminal possession of a controlled substance in the first degree, criminal possession of a controlled substance in the third degree and criminally using drug paraphernalia in the second degree, and convicted of all three charges following a jury trial, defendant now appeals.

We reject defendant's argument that the information

contained in the affidavit for the search warrant was insufficient. The affidavit of the attesting officer, Investigator Douglas Martin, was based upon, *inter alia,* his surveillance of two closely situated premises (611 South Meadow Street and 127 South Street) over a period of approximately 26 days. These premises were located in a neighborhood known by Martin to have a high incidence of narcotics trafficking. Throughout this time period, Martin observed a high volume of people making brief trips to 127 South Street, many of whom were known by Martin to be involved with drugs. He further observed many individuals traversing back and forth between the premises located at 611 South Meadow Street and 127 South Street and remaining at each location for brief periods.

Martin also observed individuals, after being denied access to 127 South Street, linger in the area. Shortly thereafter, he observed an individual jaunt from 611 South Meadow Street to 127 South Street and later return back to 611 South Meadow Street. He then observed the lingerers return to 127 South Street and gain access. Based upon Martin's years of training and experience, he concluded that the activity between these two premises was indicative of illegal drug trafficking, i.e., drugs were being sold from 127 South Street and larger quantities of same were being stored at 611 South Meadow Street. We find that the information contained in Martin's affidavit provided sufficient details "to support a reasonable belief that * * * evidence of a crime [might] be found" (*People v Bigelow,* 66 NY2d 417, 423) at 611 South Meadow Street and "that it was more probable than not that criminal activity was taking place" there (*People v Pinchback,* 187 AD2d 540, 541, *affd* 82 NY2d 857; *see, People v Munoz,* 205 AD2d 452, *lv denied* 84 NY2d 870).

Defendant also contends that the in-court identification of him by Investigator James Herson, who conducted the surveillance of the apartment along with Martin, should have been suppressed because Herson had no independent recollection of him. Rather, according to defendant, Herson was only able to identify him after reviewing surveillance photographs, videos and notes (his own and those of Martin). A review of Herson's testimony at the *Wade* hearing belies defendant's contentions. Herson unequivocally testified at the hearing that his identification of defendant was based on his own numerous personal observations of defendant on four separate days between May 11, 1994 and June 2, 1994 (*cf., People v Peguero-Castillo,* 174 AD2d 1026). To the extent that Herson testified that he needed to rely on notes or videos, it was merely to recall the exact dates and times of these first-hand observations. Because the

evidence at the *Wade* hearing demonstrated that Herson could identify defendant from his own knowledge and observations, County Court did not err in denying defendant's motion to suppress Herson's identification testimony.

Finally, because the charges against defendant were committed prior to the legislative annulment of the principles espoused in *People v Ryan* (82 NY2d 497; *see*, L 1995, ch 75), the People were required to prove beyond a reasonable doubt not only that defendant was aware that he possessed cocaine, but also that its aggregate weight was at least four ounces (*see*, *People v Ryan, supra*, at 506). In reviewing the evidence in the light most favorable to the prosecution, as we must (*see*, *People v Alexander*, 75 NY2d 979, 980), we find that the People presented legally sufficient evidence to support each charge.

There was ample proof in the record that defendant actually resided at the 611 South Meadow Street apartment and, therefore, possessed the cocaine (*see*, *People v Torres*, 68 NY2d 677, 678-679). A process server testified that when he served legal papers at this address shortly before defendant's arrest on June 2, 1994, defendant identified himself as the apartment's resident. Notably, the process server had a specific recollection of the individual to whom he served these papers and unequivocally identified defendant in court as that individual. Moreover, defendant was observed by police investigators entering and leaving this apartment on numerous occasions prior to his arrest.

The trial evidence further established that drug paraphernalia, numerous individually packaged bags containing cocaine, numerous small ziploc bags and a large amount of cash were found in the apartment and defendant was in close proximity to same when the search warrant was executed. There was also evidence that defendant was physically handling the drugs and counting the packets of cocaine shortly before the search warrant was executed. We find that this evidence permitted the jury to infer that defendant had dominion and control over the drugs and drug paraphernalia seized from the apartment, knowingly possessed the cocaine and was aware of its weight (*see*, *People v Sanchez*, 86 NY2d 27, 35; *People v Graham*, 209 AD2d 822, 823, *lv denied* 84 NY2d 1011; *People v Love*, 204 AD2d 97, 98, *affd* 84 NY2d 917; *People v Riddick*, 159 AD2d 596, 597, *lv denied* 76 NY2d 741).

We have reviewed defendant's remaining arguments and find that they are either unpreserved for review or without merit.

Cardona, P. J., Mercure, Casey and Spain, JJ., concur. Ordered that the judgment is affirmed.