■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RAHEIME PINCHBACK, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Queens County (Fisher, J.), rendered October 31, 1990, convicting him of criminal possession of a weapon in the third degree and criminally using drug paraphernalia, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial of that branch of the defendant's omnibus motion which was to suppress physical evidence seized pursuant to a search warrant.

Ordered that the judgment is affirmed.

The defendant was arrested in his parents' home, located at 130-12 Inwood Street, Queens, when police officers assigned to the Queens Narcotics District executed a search warrant covering the subject premises and recovered weapons and drug paraphernalia. During the course of the search, the defendant made inculpatory statements indicating that the contents of two safes in the basement belonged to him. Additionally, the defendant stated that he slept in a basement bedroom, a search of which revealed the presence of a revolver. The defendant was arrested and charged with, among other things, criminal possession of a weapon in the third degree as well as criminally using drug paraphernalia in the second degree, relating to glassine envelopes recovered from the safes.

We find that the affidavit of the police officer submitted in support of the application for a search warrant contained sufficient facts to permit the issuing Judge to conclude that probable cause existed to issue a warrant for the search of the premises located at 130-12 Inwood Street. The officer's affidavit, which was based on his personal observations of the premises in question, stated that on September 13, 1989, the defendant's brother engaged in apparent narcotics sales on the corner of Inwood Street and Sutter Avenue, went to

130-12 Inwood Street where he entered the house briefly, and then returned to the intersection of Sutter Avenue and Inwood Street. There, the defendant's brother was seen to place a clear plastic bag next to some garbage near the northeast corner of that intersection. From time to time, the defendant's brother returned to that point to retrieve small, brown, plastic baggies for sale to customers. The affidavit further stated that on September 25, 1989, on the corner of Inwood Street and Sutter Avenue, an undercover officer engaged in a drug transaction with an individual named "Kahlif". Thereafter, the defendant's brother arrived at the intersection where he was handed a sum of United States currency by Kahlif as well as other individuals seen selling on or near the intersection. The defendant's brother then jogged to 130-12 Inwood Street, with cash in hand, and entered the premises. On another occasion, the affiant observed an individual named David Hornsby as he made an apparent drug sale to an individual at the intersection of Inwood Street and Sutter Avenue. Thereafter, Hornsby left that intersection, went to one of the automobiles parked in the driveway of 130-12 Inwood Street, removed a brown paper bag from the driver's side, returned to the intersection and placed the brown bag in the gas tank flap of a white van parked nearby. Hornsby continued his apparent sales. We find that this information presented the issuing Judge with "information sufficient to support a reasonable belief that * * * evidence of a crime [might] be found" at the premises located at 130-12 Inwood Street and that it was more probable than not that criminal activity was taking place at the place to be searched (People v Bigelow, 66 NY2d 417, 423; see, People v Mercado, 68 NY2d 874). As a result, we find there was probable cause to issue the search warrant (see, People v Smith, 145 AD2d 517).

Moreover, viewing the evidence in the light most favorable to the People (see, People v Contes, 60 NY2d 620, 621), we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt. The testimony of the police officers indicated that the defendant knew the combination to the safes where the drug paraphernalia was found and, upon opening the safes, claimed ownership of the contents. Additionally, the officers testified that the defendant stated that he slept in the basement room where the weapon was ultimately recovered. Given this testimony, the jury could reasonably have found the items seized to have been within the defendant's dominion and control (see, People v Dawkins, 136 AD2d 726). Mere access by others to the area does not preclude a

finding of constructive possession *(see, People v Diaz,* 41 AD2d 382, *affd* 34 NY2d 689; *People v Torres,* 68 NY2d 677). Moreover, upon the exercise of our factual review power, we are satisfied that the verdict was not against the weight of the evidence (CPL 470.15 [5]).

Additionally, we disagree with the defendant's contention that he was denied the effective assistance of counsel. "In reviewing claims of ineffective assistance care must be taken to 'avoid * * * confusing true ineffectiveness [of counsel] with mere losing tactics' " *(People v Satterfield,* 66 NY2d 796, 798, quoting from *People v Baldi,* 54 NY2d 137, 146). Defense counsel's decision to refrain from objecting to inadmissible inculpatory statements made by the defendant was explained on the record as being part of counsel's trial strategy *(see, People v Torres,* 183 AD2d 862). Additionally, defense counsel attempted to controvert the search warrant, vigorously cross-examined prosecution witnesses, and argued that the weapons and drug paraphernalia were not under the defendant's dominion and control. Furthermore, defense counsel delivered appropriate opening and closing statements. Thus, there is no indication in the record that the defense counsel failed to act in a competent and professional manner *(see, People v Hinds,* 183 AD2d 848).

The defendant's remaining contention regarding the court's failure to give a circumstantial evidence charge is unpreserved for appellate review *(see,* CPL 470.05 [2]), and, in any event, is without merit *(see, People v Thomas,* 162 AD2d 822). Harwood, J. P., Rosenblatt and Copertino, JJ., concur.

O'Brien and Ritter, JJ., dissent, and vote to reverse the judgment, to grant that branch of the defendant's omnibus motion which was to suppress physical evidence seized pursuant to a search warrant, and to remit the matter for further proceedings consistent with the following memorandum: We conclude that the information in the search warrant application was insufficient to establish probable cause to believe that criminal activity was taking place at the subject premises. Accordingly, suppression of the evidence seized pursuant to the authority conferred by the warrant should have been granted *(see, People v Yedvobnik,* 48 NY2d 910).

The information in the police officer's affidavit, which is described in detail in the majority's decision, consisted almost exclusively of his observations of activity at an intersection near the subject premises. We find that those observations do not provide a sufficient basis for accepting the officer's conclu-

sion that: "a group of crack sellers uses 130-12 Inwood Street to 'cook' crack and package it in very distinctive brown plastic baggies. The house and the cars in the driveway are also used to store or cache supplies of crack for eventual sale by street sellers. The house is also used to store the proceeds of such sales and insures that if the street sellers are arrested, the police will only be able to seize limited amounts of drugs and cash. The automobiles are used as well to divert the attention of the police away from the house". The officer never stated that he observed narcotics or narcotics paraphernalia being taken into or out of the house. No evidence was offered linking the vehicles in the driveway to the occupants of the house, which was a glaring omission since the warrant described the vehicles as "abandoned".

"Probable cause exists when there is reasonable ground of suspicion supported by facts and circumstances strong enough in themselves to warrant a cautious man in the belief that the law is being violated on the premises to be searched" (People v Marshall, 13 NY2d 28, 34). While it has been suggested that a lower quantum of evidence of probable cause is sufficient to sustain a search authorized by a warrant than to sustain a warrantless search (see, People v Bigelow, 66 NY2d 417, 424, n), in our view, the supporting affidavit at bar fails to provide probable cause to believe that the premises contained contraband or evidence (see, People v Yedvobnik, supra). At best, the affidavit established that the defendant's brother resided at 130-12 Inwood Street; that the brother entered and left the premises on various occasions; that the brother was engaged in illegal drug activities on the corner of Inwood Street and Sutter Avenue; and that another individual, David Hornsby, while apparently engaged in narcotics sales at the intersection, removed a bag from an "abandoned" vehicle in the driveway of the subject premises and secreted that bag in another vehicle at a different address where he continued to engage in "apparent" drug sales.

Even if we were to agree with the majority that the search warrant was properly issued, we would reverse on the ground that the defendant was denied the effective assistance of counsel. The defendant was convicted of criminal possession of a weapon in the third degree with respect to a revolver that was found in a basement room at the subject premises. He was also convicted of criminally using drug paraphernalia in the second degree with respect to one-inch plastic baggies which were found in a safe in the basement. During pretrial proceedings, the People conceded that the police elicited state-

ments from the defendant in violation of his *Miranda* rights. Accordingly, the court ruled that the defendant's statements were inadmissible on the People's case in chief. Nevertheless, three police officers testified on the People's direct case that the defendant admitted that the contents of the safe belonged to him and that the room in the basement where the revolver was found was his room. The defense counsel did not object to the admission of these statements on the ground that they had been suppressed. There is no mention on the record of this violation of the court's suppression ruling until the date set for sentencing, at which time the court referred to this "unusual" aspect of the case and its assumption that defense counsel's failure to object was a tactical decision to avoid having the statements introduced by the People on rebuttal. Defense counsel agreed, without further elaboration, that this was his trial strategy.

We are mindful that, in assessing a claim of ineffective assistance of counsel, it is important to "avoid both confusing true ineffectiveness with mere losing tactics and according undue significance to retrospective analysis" *(People v Baldi,* 54 NY2d 137, 146; *see also, People v Rivera,* 71 NY2d 705; *People v Satterfield,* 66 NY2d 796). However, we do not agree with the majority that the failure to object to the admission of this damaging testimony can be excused as merely a losing strategy. There was evidence that other persons had access to the basement room and to the safe. The defendant's statements established his possession of the contents of the safe and of the revolver found in the basement room. Without such evidence, it was questionable whether the People could have established a prima facie case. We therefore conclude that the defendant was afforded less than meaningful representation *(see, People v Baldi, supra),* and that there is a reasonable probability that the result of the trial would have been different but for counsel's error *(see, People v Donovan,* 184 AD2d 654; *People v Daley,* 172 AD2d 619; *People v Sullivan,* 153 AD2d 223; *cf., People v Benn,* 68 NY2d 941).